UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM FRANCHI,<br><br>              Plaintiff,<br><br>   v.<br><br>SQUARE, INC., JACK DORSEY, DAVID VINIAR, ROELOF BOTHA, AMY BROOKS, SHAWN CARTER, PAUL DEIGHTON, RANDY GARUTTI, JAMES MCKELVEY, MARY MEEKER, ANNA PATTERSON, LAWRENCE SUMMERS, and DARREN WALKER,<br><br>              Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Adam Franchi ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Square, Inc. ("Square" or the "Company") and Square's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to acquire Afterpay Limited ("Afterpay").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on October 5, 2021. The Proxy recommends that Square stockholders vote in favor of issuing 111 million shares of Square

1

common stock (the "Stock Issuance") to effectuate Square's acquisition of Afterpay. The Proposed Transaction was first disclosed on August 1, 2021, when Square and Afterpay announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Afterpay stockholders will receive 0.375 shares of Square common stock or 0.375 CHESS Depositary Interests for each share of Afterpay they hold (the "Merger Consideration"). The deal is valued at approximately $29 billion and is expected to close in the first quarter of 2022.

3.      The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Square management, as well as the financial analyses conducted by Morgan Stanley & Co. LLC ("Morgan Stanley"), Square's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Stock Issuance and/or the Proposed Transaction unless and until the material information discussed below is disseminated to Square's stockholders. In the event the Stock Issuance and/or Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Square.

6.      Defendant Square is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1455 Market Street, Suite 600, San Francisco, California 94103. Square common stock trades on NYSE under the

ticker symbol "SQ."

7. Defendant Jack Dorsey has been President, CEO and a director of the Company since 2009. Defendant Dorsey also serves as Chairman of the Board.

8. Defendant David Viniar has been a director of the Company since 2013. Defendant Viniar also serves as Lead Independent Director.

9. Defendant Roelof Botha has been a director of the Company since 2011.

10. Defendant Amy Brooks has been a director of the Company since 2019.

11. Shawn Carter has been a director of the Company since May 6, 2021.

12. Defendant Paul Deighton has been a director of the Company since 2016.

13. Defendant Randy Garutti has been a director of the Company since 2017.

14. Defendant James McKelvey has been a director of the Company since 2009.

15. Defendant Mary Meeker has been a director of the Company since 2011.

16. Defendant Anna Patterson has been a director of the Company since 2017.

17. Defendant Lawrence Summers has been a director of the Company since 2011.

18. Defendant Darren Walker has been a director of the Company since 2020.

19. Defendants Dorsey, Viniar, Botha, Brooks, Carter, Deighton, Garutti, McKelvey, Meeker, Patterson, Summers and Walker are collectively referred to herein as the "Board."

20. Nonparty Afterpay is an Australian public company limited by shares. Afterpay's principal executive offices are located at Level 5, 406 Collins Street, Melbourne, VIC, Australia, 3000. Afterpay's shares are traded on the Australian Securities Exchange under the ticker symbol "APT."

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

22. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

24. Square began as a way to help small businesses accept credit card payments. Now, Square offers businesses hardware, software, and financial products and services, and with Cash App provides financial products and services to individuals.

25. On August 1, 2021 American Pacific Daylight Time (August 2, 2021 Australian Eastern Standard Time), the Company entered into the Merger Agreement with Afterpay.

26. According to the press release issued on August 1, 2021 announcing the Proposed Transaction:

> **Square, Inc. Announces Plans to Acquire Afterpay, Strengthening and Enabling Further Integration Between its Seller and Cash App Ecosystems**
>
> *Brings together two of the fastest growing global fintech companies to advance shared mission of economic empowerment and financial inclusion*
>
> **SAN FRANCISCO and MELBOURNE, AUSTRALIA – August 1, 2021 (PDT)** – Square, Inc. (NYSE: SQ) and Afterpay Limited (ASX: APT) today announced that they have entered into a Scheme Implementation Deed under which Square has

agreed to acquire all of the issued shares in Afterpay by way of a recommended court-approved Scheme of Arrangement. The transaction has an implied value of approximately US$29 billion (A$39 billion) based on the closing price of Square common stock on July 30, 2021, and is expected to be paid in all stock. The acquisition aims to enable the companies to better deliver compelling financial products and services that expand access to more consumers and drive incremental revenue for merchants of all sizes. The closing of the transaction is expected in the first quarter of calendar year 2022, subject to the satisfaction of certain closing conditions outlined below.

"Square and Afterpay have a shared purpose. We built our business to make the financial system more fair, accessible, and inclusive, and Afterpay has built a trusted brand aligned with those principles," said Jack Dorsey, Co-Founder and CEO of Square. "Together, we can better connect our Cash App and Seller ecosystems to deliver even more compelling products and services for merchants and consumers, putting the power back in their hands."

Afterpay, the pioneering global 'buy now, pay later' (BNPL) platform, will accelerate Square's strategic priorities for its Seller and Cash App ecosystems. Square plans to integrate Afterpay into its existing Seller and Cash App business units, enable even the smallest of merchants to offer BNPL at checkout, give Afterpay consumers the ability to manage their installment payments directly in Cash App, and give Cash App customers the ability to discover merchants and BNPL offers directly within the app.

"Buy now, pay later has been a powerful growth tool for sellers globally," said Alyssa Henry, Lead of Square's Seller business. "We are thrilled to not only add this product to our Seller ecosystem, but to do it with a trusted and innovative team."

"The addition of Afterpay to Cash App will strengthen our growing networks of consumers around the world, while supporting consumers with flexible, responsible payment options," said Brian Grassadonia, Lead of Square's Cash App business. "Afterpay will help deepen and reinforce the connections between our Cash App and Seller ecosystems, and accelerate our ability to offer a rich suite of commerce capabilities to Cash App customers."

Afterpay is an industry leader with a best-in-class product and strong cultural alignment with Square. As of June 30, 2021, Afterpay serves more than 16 million consumers and nearly 100,000 merchants globally, including major retailers across key verticals such as fashion, homewares, beauty, sporting goods and more. Afterpay empowers consumers to access the things they want and need, while allowing them to maintain financial wellness and control. Afterpay also assists merchants in growing their businesses by helping to drive repeat purchases, increase average transaction sizes, and provide their buyers with the ability to pay over time. Afterpay is deeply committed to helping people spend responsibly

5

without incurring service fees for those who pay on time, interest, or revolving debt, and supports consumers in a number of countries across APAC, North America and Europe (including under its Clearpay brand).

"By combining with Square, we will further accelerate our growth in the U.S. and globally, offer access to a new category of in-person merchants, and provide a broader platform of new and valuable capabilities and services to our merchants and consumers. We are fully aligned with Square's purpose and, together, we hope to continue redefining financial wellness and responsible spending for our customers," said Anthony Eisen and Nick Molnar, Afterpay Co-Founders and Co-CEOs. "The transaction marks an important recognition of the Australian technology sector as homegrown innovation continues to be shared more broadly throughout the world. It also provides our shareholders with the opportunity to be a part of future growth of an innovative company aligned with our vision."

For Square, BNPL presents an attractive opportunity supported by shifting consumer preferences away from traditional credit, especially among younger consumers, consistent demand from merchants for new ways to grow their sales, and the global growth in omnichannel commerce. Combined, Square and Afterpay's complementary businesses present an opportunity to drive growth across multiple strategic levers, including:

- **Enhance both the Seller and Cash App ecosystems.** Afterpay's global merchant base will accelerate Square's growth with larger sellers and expansion into new geographies, while helping to drive further acquisition of new Square sellers. Afterpay will expand Cash App's growing product offering, enable customers to manage their repayments, and help customers discover new merchants when the Afterpay App is integrated into Cash App.

- **Bring added value, differentiation, and scale to Afterpay.** Afterpay will benefit from Square's large and growing customer base of more than 70 million annual transacting active Cash App customers and millions of sellers, which will expand Afterpay's reach and growth both online and in-person. Afterpay consumers will receive the benefits of Cash App's financial tools, including money transfer, stock and Bitcoin purchases, Cash Boost, and more.

- **Drive long-term growth with meaningful revenue synergy opportunities.** Square believes Afterpay will be accretive to gross profit growth with a modest decrease in Adjusted EBITDA margins expected in the first year after completion of the transaction. Square sees an opportunity to invest behind Afterpay's strong unit economics as well as attractive growth synergies, including the opportunity to introduce offerings and drive incremental growth for sellers and increased engagement for Cash App customers.

Afterpay's Co-Founders and Co-CEOs will join Square upon completion of the transaction and help lead Afterpay's respective merchant and consumer businesses, as part of Square's Seller and Cash App ecosystems. Square will appoint one Afterpay director as a member of the Square Board following closing.

**B. The Materially Incomplete and Misleading Proxy**

27. On October 5, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance and the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Stock Issuance and the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

28. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed "certain financial projections of Afterpay prepared by the management of Square," as well as "certain internal financial statements and other financial and operating data" for Square. Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Square's management provided to the Board and Morgan Stanley.

29. Notably, Defendants failed to disclose the line items underlying projected Adjusted EBITDA and Unlevered Free Cash Flow for the Square Consensus Projections. The Proxy also fails to disclose the line items underlying projected Adjusted EBITDA and Levered Free Cash Flow for the Afterpay Selected Street Projections and the Afterpay Standalone Projections. Additionally, the Proxy fails to disclose the line items underlying projected Levered Free Cash

Flow for the Synergy Projections. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Stock Issuance and the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Morgan Stanley's Financial Analyses*

30. With respect to the *Public Trading Comparables Analysis,* the Proxy fails to disclose the companies selected for the analysis. The Proxy further fails to disclose the multiples for CY 2023E AV / Gross Profit, CY 2023E AV / Gross Profit/Growth, CY 2023E AV / Steady State EBITDA, and CY 2023E AV / Steady State EBITDA/Growth for each company.

31. With respect to the *Discounted Equity Value Analysis—Afterpay*, the Proxy fails to disclose the estimated future net debt, non-controlling interest, and investments in associates and equity investments. The Proxy also fails to disclose the fully diluted shares outstanding.

32. With respect to the *Discounted Equity Value Analysis—Square*, the Proxy fails to disclose the estimated future net debt and non-controlling interest. The Proxy also fails to disclose the fully diluted shares outstanding.

33. With respect to the *Discounted Cash Flow Analysis—Afterpay,* the Proxy fails to disclose the levered free cash flows utilized for the analysis. The Proxy also fails to disclose the terminal values calculated for each of the projection cases. Furthermore, the Proxy fails to disclose the inputs and assumptions underlying the discount rates of 8.0% to 10.0% and the growth rates of 3.5% to 4.5%.

34. With respect to the *Discounted Cash Flow Analysis—Square,* the Proxy fails to disclose which free cash flows were utilized for the analysis. The Proxy also fails to disclose the calculated terminal values. Furthermore, the Proxy fails to disclose the inputs and assumptions underlying the discount rates of 10.0% to 12.0% and the growth rates of 3.5% to 4.5%.

35. With respect to the *Precedent Transactions Premia Analysis*, the Proxy fails to

disclose the transactions selected for the analysis. The Proxy further fails to disclose the premiums for each of the selected transactions.

36.     With respect to the *Equity Research Analysts' Future Price Targets Analysis*, the Proxy fails to identify each of the price targets observed, as well as the source of the analyst price targets.

37.     The Proxy further fails to disclose crucial information concerning Morgan Stanley's potential conflicts of interest. Square agreed to pay Morgan Stanley $5 million upon public announcement of the Proposed Transaction, with $25 million to be paid when the Proposed Transaction closes, and "an additional discretionary fee of up to $15 million." The Proxy does not disclose the necessary conditions for Morgan Stanley to receive the $15 million discretionary fee, or other details of the compensation arrangement. The Proxy also fails to disclose information about the services provided to Square in the two years prior to rendering its opinion.

38.     This information is necessary to provide Company stockholders a complete and accurate picture of the process leading to the Proposed Transaction and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Stock Issuance or Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

39.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Stock Issuance and the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

40.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the

Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

41. Further, the Proxy indicates that on August 1, 2021, Morgan Stanley reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Square stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Morgan Stanley's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

42. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Defendants have filed the Proxy with the SEC with the intention of soliciting Square stockholder support for the Stock Issuance and the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

45. In so doing, Defendants made materially incomplete and misleading statements

and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Square, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

46.   Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.   Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Square shares and the financial analyses performed by Morgan Stanley in support of its fairness opinion.

48.   Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Morgan Stanley reviewed and discussed its financial analyses with the Board on August 1, 2021, and further states that the Board considered Morgan Stanley's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

49. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Stock Issuance and the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Square within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Square and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance and the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Stock Issuance and/or the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

  B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 22, 2021

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*